# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| **AMBER RUCKER**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**GREAT DANE PETROLEUM CONTRACTORS, INC.**, a Florida corporation,<br><br>Defendant. | **CIVIL ACTION**<br><br>Case No.  2:21-cv-207<br><br>Judge:<br><br>Mag. Judge: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **AMBER RUCKER** ("RUCKER" or "Plaintiff"), by and through undersigned counsel, and states the following for her Complaint:

## INTRODUCTION

1. This is an action brought under the federal False Claims Act (FCA), Florida's Private Whistleblower Act (FWA) and Florida's Public Whistleblower Act (PWA) for (1) retaliation in violation of the FCA, (2) retaliation in violation of the FWA, and (3) retaliation in violation of the PWA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331.

1

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff worked in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Collier County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since Collier County is within the Fort Myers Division.

## PARTIES

5. Plaintiff, **AMBER RUCKER** ("**RUCKER**" or "Plaintiff") is an individual who domiciled in Collier County, Florida and was employed by the Defendant.

6. Defendant is a Florida corporation and employed the Plaintiff in Collier County, Florida. The Defendant is a private company that has contracts with federal, state and/or local governmental bodies and provides them services. The Defendant employs in excess of 10 employees and is an employer under the FCA and FWA.

## GENERAL ALLEGATIONS

7. The Plaintiff was employed by the Defendant as its CFO/Chairman's personal assistant, payroll administrator and acting human resources manager.

8. The Plaintiff began her employment with the Defendant in June 2012.

9. During the course of her employment – and in particular, during the months prior to her termination – the Plaintiff observed a wide range of illegal acts being committed by the Defendant.

10. The Defendant's illegal acts that the Plaintiff observed and complained about include, but are not limited to:

   a. paying bribes to procure contracts (often within a competitive bidding process), including Steven Nale (President) bribing 7-11's project manager (Daniel Tubb) with expensive tactical equipment, family vacations, cash and other extravagant gifts in return for several millions of dollars' worth of contracts. In execution of these schemes, Juan Barcia witnessed Steven Nale giving Daniel Tubb a cash payment of $5,000.00. Several gifts such as patio furniture, cash, and many other items were also given to Damon Bastin (Speedway's project manager) in return for contracts. Another project manager, Greg Webb (Chevron) was given season tickets to the Tampa Bay Buccaneers and a cruise in March 2017. John Falso (another 7-11 project manager) received college football playoff tickets and many other gifts throughout the years.

   b. allowing its principals to use the company credit card for personal use (including, for example, at adult entertainment clubs) and then illegally writing off the expenses as business-related, including the personal use of company credit card charges made by Steven Nale, Danielle Nale-Watkins, Shea Nale, Michael Balan, Juan Barcia, Robert Freeman and others. Items bought are a wide range of meals, vacations, a peloton bike, home remodeling, fuel for fishing boats, etc. All personal charges were hidden in job costs and or business expenses. The Defendant's Chairman/CFO always explained that Nale compensated himself and others by using the company credit card to avoid paying taxes,

   c. misrepresenting to its worker's compensation insurance carrier that it is a drug-free workplace in order to procure a discounted worker's compensation insurance premium when in fact it allowed employees to work while under the influence of controlled substances,

    d. claiming and collecting $2,850.500.00 million in federal PPP monies and then knowingly misusing those monies for purposes unintended by the federal program, while also approving employee leaves of absences but fraudulently "keeping them on the books" and even fraudulently altering payroll records to reflect fictitious payroll expenses for time not worked by employees, all in an effort to make it appear it had complied with the PPP's requirements when it knowingly had not, which the Plaintiff investigated, gathered evidence of, objected to and tried to stop,

    e. requiring customers to pay inflated or fictitious job costs fraudulently added to contracts and/or work orders, which inflated or fictitious costs were then illegally deducted as legitimate business expenses to evade taxes. In trying to halt these illegal practices, the Plaintiff provided many months of proof that Steven Nale, Danielle Nale-Watkins and Michael Balan were embezzling hundreds of thousands of dollars' worth of materials to remodel their homes, personal vacations, stolen time that had been paid weekly, meals, family flights, etc. The Plaintiff refused to process their bogus credit card charges against jobs, and,

    f. paying favorite employees, a grossly inflated per diem, rather than categorize such monies as wages, in order to evade paying required payroll taxes.

11.    The Plaintiff complained of the above-referenced illegal acts numerous times verbally and in writing to the Defendant's CFO and the President. This included the Plaintiff sending a signed, written complaint and verbal complaint to the Defendant's Chairman/CFO on April 7, 2020, in addition to consistently objecting to such illegal practices.

12. Instead of investigating her complaints and objections, just days after her last complaints, the Defendant abruptly placed her on paid administrative leave and then unbeknownst to her, terminated her on January 15, 2021.

13. As a direct and proximate result of objecting to and filing a complaint regarding the Defendant's violations of law, which included the Defendant fraudulently obtaining and retaining PPP monies, the Defendant subjected the Plaintiff to adverse employment action, to wit: her termination.

## COUNT I – VIOLATION OF VIOLATION OF 31 U.S.C. § 3730(h): RETALIATION

14. Plaintiff incorporates by reference Paragraphs 1-13 of this Complaint as though fully set forth below.

15. The Plaintiff, an employee, believed in good faith, and a reasonable employee in the same or similar circumstances would also believe, that Defendant was committing a fraud upon federal government agencies and other private entities.

16. Defendant was aware of Plaintiff's disclosure of its alleged misdeeds to her immediate supervisor and administrators.

17. Immediately thereafter, Plaintiff began to receive unsatisfactory performance reviews, reprimands, a hostile work environment, and adverse employment action.

18. Immediately after objecting to Defendant's misdeeds, Plaintiff began to be subjected to retaliation.

19. Pursuant to 31 U.S.C. § 3730(h) of the False Claims Act (hereinafter "FCA"), any employee who is discharged, demoted, suspended, threatened, harassed and otherwise discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done under the FCA is entitled to all relief necessary to make the employee whole.

20. The purpose of the FCA, as explained in the Senate report accompanying the 1986 amendments to the FCA, states that Congress added a retaliation provision to the FCA "to halt companies… from using the threat of economic retaliation to silence 'whistleblowers'" and to "assure those who may be considering exposing fraud that they are legally protected from retaliatory acts." S. Rep. No. 99-345, at 34 (1986), U.S. Code Cong. & Admin News 1986, at 5266, 5299.

21. Defendant began its negative employment actions against Plaintiff and ultimately did discharge her from her position for reasons contrary to public policy, as set out in 31 U.S.C. § 3730(h) and without just cause.

22. Defendant, in discharging, suspending, demoting, threatening, disciplining and harassing Plaintiff in and from her employment, retaliated and discriminated against her because of complaints and concerns raised by her to Defendant.

23. The acts of Defendant in demoting, suspending, threatening, disciplining, harassing, discriminating, and retaliating against Plaintiff, including but not limited to the wrongful discharge of employment, adverse employment actions, denial of true and correct performance appraisals, demotion and termination of Plaintiff by Defendant violated the provisions of 31 U.S.C. § 3730(h).

24. Following Plaintiff's objection to Defendant's misappropriation and illegal retention of federal funds, Defendant has discriminated, suspended, demoted, threatened, disciplined, harassed and retaliated against Plaintiff for lawful conduct protected under the FCA.

25. Defendant has terminated, discharged, suspended, threatened, disciplined, harassed, and discriminated against Plaintiff in her employment in violation of 31 U.S.C. § 3730(h).

26. Defendant has discriminated and retaliated against Plaintiff for lawful and protected conduct in connection with her investigation for, initiation of, testimony, potential testimony concerning, and assistance in an action filed or to be filed under the FCA, 31 U.S.C. § 3729 et seq.

27. Plaintiff is entitled to all relief necessary to make her whole, including reinstatement with the same seniority status that she would have had but for the discrimination and two times the amount of back pay.

28. Plaintiff, pursuant to 31 U.S.C. § 3730(h), is entitled to litigation costs and all reasonable attorneys' fees incurred in connection with this action.

29. Plaintiff's conduct, including but not limited to investigating Defendant's misappropriation and retention of federal funds, and also raising complaints concerning same and bearing witness to violations of same, potential testimony concerning, potential initiation of and assistance in an action filed or potentially to be filed pertaining to the FCA, is all protected conduct under the FCA.

30. Defendant knew that Plaintiff was engaged in protected conduct as referenced herein.

31. Defendant discharged, terminated, demoted, suspended, threatened, disciplined and harassed Plaintiff from her employment and after her employment, and otherwise discriminated against her because of her protected conduct. In fact, after she was terminated and communicated her intent to pursue whistleblower action and to put a stop to the Defendant's illegal practices, the Defendant suddenly threatened to report her to the State Attorney's Office.

32. As a direct and proximate result of the violations of 31 U.S.C. § 3730(h) as referenced and cited herein, Plaintiff has lost all the benefits and privileges of her employment and has been substantially and significantly injured in her career path that was anticipated from her employment.

33. As a direct and proximate result of the violations of 31 U.S.C. § 3730(h) as referenced and cited herein, and as a direct and proximate result of the

prohibited acts perpetrated against her, Plaintiff is entitled to all relief necessary to make her whole.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Injunctive relief directing this Defendant to cease and desist from all retaliation against employees who engage in speech protected by the FCA;

ii. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii. Double back pay;

iv. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

v. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

vi. Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

vii. Reasonable attorney's fees plus costs;

viii. Compensatory damages, and;

ix. Such other relief as this Court shall deem appropriate.

## **COUNT II –VIOLATION OF FLORIDA STATUTE 448.102: FLORIDA'S PRIVATE WHISTLEBLOWER ACT**

34. Plaintiff incorporates by reference Paragraphs 1-13 of this Complaint as though fully set forth below.

35. Plaintiff was an employee of the Defendant, a private company.

36. At all material times, Plaintiff was to be protected from negative employment action by Florida Statute 448.102(1)-(3), commonly known as Florida's "whistleblower statute," which in relevant part provides:

> "An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice;
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer, and;
>
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

37. Plaintiff did engage in statutorily protected activity by her objections, written complaints, and refusal to participate in, the Defendant's illegal practices.

38. Immediately after engaging in statutorily protected activity, Plaintiff suffered negative employment action, her termination, which is a direct result of this statutorily protected activity.

39. Plaintiff's termination and her engaging in statutorily protected activity are causally related.

40. The Defendant knew that Plaintiff was engaged in protected conduct as referenced herein.

41. The Defendant discharged, terminated and retaliated against Plaintiff from her employment and after her employment, and otherwise retaliated against her because of her protected conduct. In fact, after she was terminated and communicated her intent to pursue whistleblower action and to put a stop to the Defendant's illegal practices, the Defendant suddenly threatened to report her to the State Attorney's Office.

42. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, Plaintiff has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path that was anticipated from her employment.

43. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, Plaintiff is entitled to all relief necessary to make her whole.

**WHEREFORE,** Plaintiff demands damages against Defendant for violation of Florida's Private Sector Whistle-blower's Act (Section 448.102, Fla. Stat.), including but not limited to all relief available under Section 448.103, Fla. Stat., such as:

(a) an injunction restraining continued violation of this act,

(b) reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position,

(c) reinstatement of full fringe benefits and seniority rights,

(d) compensation for lost wages, benefits, and other remuneration,

(e) any other compensatory damages allowable at law,

(f) attorney's fees, court costs and expenses, and

(g) such other relief this Court deems just and proper.

## COUNT III – VIOLATION OF FLORIDA'S PUBLIC WHISTLEBLOWER ACT (PWA)

44. Plaintiff incorporates by reference Paragraphs 1-13 of this Complaint as though fully set forth below.

45. At all material times, Plaintiff was an employee and the Defendant was her employer covered by and within the meaning of the PWA.

46. Defendant engages in business with any one or more of the following: a state, regional, county, local, or municipal government entity, whether executive, judicial, or legislative; an official, officer, department, division, bureau,

commission, authority, or political subdivision therein; and/or a public school, community college, or state university.

47.     Plaintiff was qualified for the position that she held with the Defendant.

48.     Plaintiff did engage in statutorily protected activity.

49.     Plaintiff did make several disclosures of the Defendant's violations of law to both the Defendant and its Chairman/CFO.

50.     Plaintiff did suffer adverse employment action, which is causally linked to her engagement in statutorily protected activity.

51.     Plaintiff's complaints and disclosures constitute a protected activity because his complaints and disclosures were concerning an unlawful activity of the Defendant.

52.     Said protected activity was the proximate cause of the Defendant's negative employment actions against Plaintiff, which included Plaintiff's termination.

53.     Instead of investigating Plaintiff's complaints and lauding her honest reporting of violations of law, the Defendant retaliated against the Plaintiff by terminating her employment.

54.     The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of the PWA.

55. As a direct and proximate result of the violations of the PWA, as referenced and cited herein, Plaintiff has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

56. As a direct and proximate result of the violations of the PWA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, Plaintiff is entitled to all relief necessary to make her whole as provided for under the PWA.

57. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

    i. Injunctive relief directing the Defendant to cease and desist from all retaliation against employees who engage in statutorily protected acts;

    ii. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she

maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

v. Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi. Temporary reinstatement under F.S. §112.3187(9)(f);

vii. Reasonable attorney's fees plus costs;

viii. Compensatory damages, and;

ix. Such other relief as this Court shall deem appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, the Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: March 10, 2021   **/s/ Benjamin H. Yormak_____**
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
9990 Coconut Road
Bonita Springs, Florida 34135
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com