# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

AMBER RUCKER, an individual

    Plaintiff,

v.                                              Case No: 2:21-cv-207-SPC-MRM

GREAT DANE PETROLEUM
CONTRACTORS, INC.,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant Great Dane Petroleum Contractors, Inc.'s Motion to dismiss or transfer for improper venue. (Doc. 12). Plaintiff Amber Rucker responded in opposition. (Doc. 13).

## **BACKGROUND**[2]

This is a whistleblower retaliation case. Rucker worked for Great Dane. During her tenure, Rucker uncovered illegal conduct, including bribery, embezzlement, and fraud. Great Dane fired Rucker after she complained of and reported the malfeasance. So Rucker sued.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] These are the facts alleged, which the Court accepts as true if affidavits do not contradict them. *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1313 (S.D. Fla. 2018).

At this point, Great Dane doesn't attack Rucker's allegations. Instead, it challenges where she filed them. The company—headquartered in Fort Lauderdale—seeks dismissal or transfer to the Southern District.

## DISCSUSSION

To be clear, the Local Rules only permit intradistrict transfers (i.e., transfers to another Middle District Division). *See* Local Rule 1.04(b) ("The judge must transfer the action *to the division* most consistent with the purpose of this rule." (emphasis added)). The Motion seeks an interdistrict transfer. So despite Great Dane's contention, the Local Rule does not affect this issue.

With that resolved, the Court turns to the relevant legal standards.

### A. Venue

A defendant can challenge venue under Federal Rule of Civil Procedure 12(b)(3). *Robey*, 343 F. Supp. 3d at 1313. "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). The general venue statute permits suit in these places:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). A "plaintiff bears the burden of showing that the venue selected is proper." *Robey*, 343 F. Supp. 3d at 1313.

For venue, a corporation resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). In multidistrict states—like Florida—a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). Great Dane is a Florida corporation residing in the Southern District—where it has a principal place of business. But whether it also resides in the Middle District is a closer call.[3]

---

[3] This presumes Great Dane's incorporation in Florida does not automatically make venue proper everywhere in Florida. While there is older precedent supporting that conclusion, *Davis v. Hill Eng'g, Inc.*, 549 F.2d 314, 323-24 (5th Cir. 1977), more recent cases say otherwise after changes to the venue statute, *see* 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3811 (4th ed. 2021). So the Court addresses the full analysis.

Courts use a two-part test to decide if there is personal jurisdiction over a nonresident defendant. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990). "First, we consider the jurisdictional question under the state long-arm statute." *Id.* "If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Id.*

The first prong focuses on Florida's long-arm statute:

> A person . . . who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

Fla. Stat. § 48.193(1)(a)1. "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam).

"Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." *[Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.](#)*, 421 F.3d 1162, 1167 (11th Cir. 2005) (internal citations omitted).

After review, the Court concludes Great Dane operated, conducted, engaged in, or carried on business in Naples. *See [Williams v. 3RD Home Limited](#)*, No. 8:20-cv-1647-CEH-JSS, 2021 WL 825047, at *5-6 (M.D. Fla. Mar. 4, 2021).

Until retiring recently, Great Dane's CFO worked remotely from his home in Naples. In the age of remote workers, that alone might not satisfy the statute. But on this record, Rucker is correct that Great Dane effectively operated a corporate office out of CFO's home. From Naples, CFO supervised Rucker (who worked remotely from outside Florida). Rucker reported the alleged malfeasance underlying her claims to CFO. Along with CFO, another employee worked out of CFO's home every day before COVID-19. What's more, Great Dane has a corporate bank account, listing CFO's address for the company. And Great Dane has contractor's licenses in Collier County. This all shows a general course of business activity for financial gain. But the kicker is CFO was Great Dane's registered agent at his Naples address. The

registered agent of a corporation may accept service. Fla. Stat. §§ 48.081(3)(a), 48.091(1)-(2). So Great Dane chose to be amenable to service within the Middle District. And in fact, Rucker served Great Dane with this very action through CFO in Naples. (Doc. 6).

Put simply, Great Dane conducted business in the Middle District as far as the long-arm statute is concerned.

Moving onto the second prong, the Court concludes Great Dane had enough contacts that exercising personal jurisdiction would not offend the Due Process Clause or any notions. The following test guides this analysis:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-75 (1985)). If plaintiff makes the first two showings, "defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (cleaned up).

First, Rucker's claims arise out of or relate to Great Dane's contacts with the Middle District. Rucker complained about and reported others' illegal

registered agent of a corporation may accept service. Fla. Stat. §§ 48.081(3)(a), 48.091(1)-(2). So Great Dane chose to be amenable to service within the Middle District. And in fact, Rucker served Great Dane with this very action through CFO in Naples. (Doc. 6).

Put simply, Great Dane conducted business in the Middle District as far as the long-arm statute is concerned.

Moving onto the second prong, the Court concludes Great Dane had enough contacts that exercising personal jurisdiction would not offend the Due Process Clause or any notions. The following test guides this analysis:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-75 (1985)). If plaintiff makes the first two showings, "defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (cleaned up).

First, Rucker's claims arise out of or relate to Great Dane's contacts with the Middle District. Rucker complained about and reported others' illegal

activities to her supervisor (CFO). That whistleblowing was the reason Great Dane fired Rucker. And those allegations undergird her claims here. In other words, Great Dane's contacts with the Middle District (conducting business through CFO) at least relate to Rucker's causes of action. *See Mosseri,* 736 F.3d at 1355-56.

Second, Great Dane purposefully availed itself of the privilege to conduct business in the Middle District. Applying the minimum contacts test, courts analyze contacts with the forum to see if they "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357. It is important to "identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria." *Id.*

All the facts described above about Great Dane operating an office at CFO's house support this factor too. But they are not alone. Rucker provides evidence showing Great Dane regularly conducts business on construction projects in the Middle District. Some of those projects appear ongoing to this day. To facilitate its work, Great Dane is a licensed contractor in Collier County. And again, the contacts relate to Rucker's claims. With so much

purposeful availment, it's clear Great Dane could reasonably expect to be haled into court here. See *id.* at 1357-58.

And third, exercising personal jurisdiction over Great Dane comports with notions of fair play and substantial justice. Four factors relate to this issue: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358 (cleaned up).

Any burden on Great Dane is minor. Great Dane isn't defending a faraway action. This Court is maybe two hours (door-to-door) from its sister in Fort Lauderdale. And Great Dane identifies no burden beyond potential traveling the short distance across Alligator Alley. What's more, the Middle District has an interest in adjudicating this case given the activities here. Likewise, Rucker has an interest in obtaining relief in her chosen forum, which she considers home. Finally, the judiciary has an interest in efficiently resolving this dispute instead of dismissing it or sending it somewhere else it could have been filed. In sum, Great Dane makes no compelling argument why the exercise of jurisdiction here would offend traditional notions of fair play and substantial justice.

At bottom, the Court holds venue is proper in the Middle District. So there is no basis to dismiss under Rule 12(b)(3) or transfer under 28 U.S.C.

§ 1406. *Atl. Marine*, 571 U.S. at 56 ("As a result, a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)."). Given this conclusion, it is unnecessary to address the parties' argument on whether venue lies under § 1391(b)(2).

**B. Transfer**

Even when venue is proper, a district court may transfer to another district with proper venue. 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). As noted, Rucker could have sued in the Southern District. So Great Dane wants to go there.

There are several factors relevant to this decision:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *see also Atl. Marine*, 571 U.S. at 62 n.6. No single factor is dispositive.

"The movant bears the burden of establishing that the suggested alternate forum is more convenient." *Kelling v. Hartford Life & Accident Ins.*, 961 F. Supp. 2d 1216, 1218 (M.D. Fla. 2013). And importantly, "The overarching purpose of § 1404 'is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Nat'l Tr. Ins. v. Penn. Nat'l Mut. Cas. Ins.*, 223 F. Supp. 3d 1236, 1242 (M.D. Fla. 2016) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).

First, convenience of the witnesses and parties does not support transfer. Great Dane "must make a specific showing of inconvenience to witnesses to succeed." *Id.* (citation omitted). And it failed to do so. There will be witnesses from the Southern District. But CFO (who lives in Naples) is a key witness, along with Rucker (who considers Naples home and her most convenient forum). What's more, it appears all Great Dane's unidentified witnesses would be employees. The convenience of such witnesses "is entitled to less weight because the parties will be able to compel their testimony at trial." *Id.* (cleaned up). In short, the Court finds this factor does not point to transfer.

Second, the location of documents and ease of access to proof do not lean toward the Southern District. Rucker is correct advances in modern litigation

(like e-mail and e-discovery) transformed this factor to one of little weigh in most cases, including this one. *Id.* (collecting cases).

Third, convenience of the parties is at best even, so it does not warrant transfer. Great Dane resides in the Southern District. It appears Rucker resides in Virginia. But she is domiciled in Naples and considers this the most convenient forum. With each side having a similar claim for convenience, the Court defers to Rucker's choice of forum. *See Sompo Japan Nipponkoa Ins. v. CSX Transp., Inc.*, No. 3:19-cv-1154-J-34PDB, 2020 WL 7074558, at *12 (M.D. Fla. Dec. 3, 2020).

Fourth, the locus of operative facts leans slightly for transfer. This factor looks to "the site of events from which the claim arises." *Nat'l Tr.*, 223 F. Supp. 3d at 1245 (citation omitted). Here, the operative facts arose in both the Middle and Southern Districts. As Great Dane contends, many events like the decision to terminate Rucker and failure to investigate likely occurred in the Southern District. Importantly though, significant events took place in the Middle District. Even so, the locus of operative facts probably rests in the Southern District.

Fifth, the availability of process to compel unwilling witnesses weighs against transfer. There is no suggestion any witnesses would not be willing to testify given the short travel. *See Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1330 (M.D. Fla. 2010).

Sixth, the relative means of the parties weighs against transfer. *Ritter v. Metropolitan Cas. Ins.*, No. 4:19-cv-10105-KMM, 2019 WL 8014511, at *4-5 (M.D. Fla. Dec. 3, 2019).

Seventh, this Court and the Southern District are equally familiar with Florida law. So this does not support transfer.

Eighth, as discussed, Rucker's choice of forum is entitled to considerable weight, particularly given this is her domicile. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) (The "plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum.").

And finally, trial efficiency and the interests of justice do not lean towards transfer. Great Dane does not make any showing the Southern District is less congested or would litigate this case more efficiently. *See Nat'l Tr.*, 233 F. Supp. 3d at 1247. Nor could it. Both Districts are among the busiest in the United States. And there is no indication this litigation would be any less efficient here.

Considering the above, the Court holds Great Dane failed to carry its burden to show the potential inconvenience outweighs Rucker's right to choose her forum. *See Kelling*, 961 F. Supp. 2d at 1218. Almost every factor either weighs against transfer or is neutral, and none strongly suggest this case should be litigated in the Southern District. So the Court denies the request to transfer.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss for Improper Venue, Alternative Motion to Transfer Venue (Doc. 12) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on May 17, 2021.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record