## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

AMBER RUCKER,

       Plaintiff,

v.                                  Case No: 2:21-cv-207-SPC-MRM

GREAT DANE PETROLEUM
CONTRACTORS, INC.,

       Defendant.

_____/

## OPINION AND ORDER[1]

This is a two-count whistleblower retaliation action brought under the False Claims Act (FCA), 31 U.S.C. § 3730(h), and Florida's Private Whistleblower Act (FWA), Fla. Stat. § 448.102.[2] Before the Court is Great Dane Petroleum Contractors, Inc.'s Motion to Dismiss the Amended Complaint for failure to state a claim (Doc. 32), and Amber Rucker's response in opposition (Doc. 35). For the following reasons, the Court denies the motion.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] Great Dane filed counterclaims against Rucker, but those claims have been stayed because Rucker filed for bankruptcy. (Doc. 34).

**BACKGROUND**

The Court recounts the factual background as pled in the Amended Complaint (Doc. 28), which it must take as true to decide whether the Complaint states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, *695 F.3d 1194, 1198-99 (11th Cir. 2012)*.

Great Dane is a private company that contracts with federal, state, and local government bodies and provides them services. From April 2012 to January 2021, Rucker worked for Great Dane as a personal assistant to the Chief Financial Officer/Chairman, Wayne Ashley, and as a payroll administrator and acting human resources manager. During her employment, she observed a wide range of illegal acts committed by Great Dane, she refused to participate in the illegal acts, she complained about the illegal acts, and she tried to stop them. Given her years with the company and positions she held, not surprisingly, the Amended Complaint points the finger at specific individuals, details the transactions, and provides dollar figures:

a. paying bribes to procure contracts (often within a competitive bidding process), including Steven Nale (President) bribing 7-11's project manager (Daniel Tubb) with expensive tactical equipment, family vacations, cash and other extravagant gifts in return for several millions of dollars' worth of contracts. In execution of these schemes, Juan Barcia witnessed Steven Nale giving Daniel Tubb a cash payment of $5,000.00. Several gifts such as patio furniture, cash, and many other items were also given to Damon Bastin (Speedway's project manager) in return for contracts. Another project manager, Greg Webb (Chevron) was given season tickets to the Tampa Bay Buccaneers and a cruise in March 2017. John

Falso (another 7-11 project manager) received college football playoff tickets and many other gifts throughout the years;

b. allowing its principals to use the company credit card for personal use (including, for example, at adult entertainment clubs) and then illegally writing off the expenses as business-related, including the personal use of company credit card charges made by Steven Nale, Danielle Nale-Watkins, Shea Nale, Michael Balan, Juan Barcia, Robert Freeman and others. Items bought are a wide range of meals, vacations, a peloton bike, home remodeling, fuel for fishing boats, etc. All personal charges were hidden in job costs and or business expenses. The Defendant's Chairman/CFO always explained that Nale compensated himself and others by using the company credit card to avoid paying taxes;

c. misrepresenting to its worker's compensation insurance carrier that it is a drug-free workplace in order to procure a discounted worker's compensation insurance premium when in fact it allowed employees to work while under the influence of controlled substances;

d. claiming and collecting $2,850,500.00 million in federal PPP monies and then knowingly misusing those monies for purposes unintended by the federal program (including, upon information and belief, misconduct identified in 10(a)), while also approving employee leaves of absences but fraudulently "keeping them on the books" and even fraudulently altering payroll records to reflect fictitious payroll expenses for time not worked by employees, all in an effort to make it appear it had complied with the PPP's requirements when it knowingly had not, which the Plaintiff investigated, gathered evidence of, objected to and tried to stop;

e. requiring customers to pay inflated or fictitious job costs fraudulently added to contracts and/or work orders, which inflated or fictitious costs were then illegally deducted as legitimate business expenses to evade taxes. In trying to halt these illegal practices, the Plaintiff provided many months of proof that Steven Nale, Danielle Nale-Watkins and Michael Balan were embezzling hundreds of thousands of dollars' worth of materials to remodel their homes, personal vacations, stolen time that had been paid

weekly, meals, family flights, etc.  The Plaintiff refused to process their bogus credit card charges against jobs, and;

f.  paying favorite employees, a grossly inflated per diem, rather than categorize such monies as wages, in order to evade paying required payroll taxes.

(Doc. 28 at ¶ 10).

She complained for years to her immediate supervisor (Ashley), and to the east coast office manager, Winsome Scott.  She also complained to outsiders by making written disclosures to 7-11's Chief Compliance Officer from October to December 2020.

Instead of investigating her complaints and objections, just days after her last complaints, Great Dane placed her on paid administrative leave and terminated her on January 15, 2021.  After she was terminated and communicated her intent to pursue a whistleblower action, Great Dane threatened to report her to the State Attorney's Office.  (Doc. 28 at ¶ 31).

## LEGAL STANDARD

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts must accept all well-pled allegations as true

and view them most favorably to plaintiff. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).

## DISCUSSION

### A. False Claims Act (Count I)

Great Dane argues that Rucker has not alleged sufficient details to meet the elements needed to state a *prima facie* FCA claim.

The FCA imposes liability on those that submit a false claim to the government. *See* 31 U.S.C. § 3729; *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1995 (2016). To encourage employees to report violations of the FCA, a Whistleblower Provision grants employees the right to bring a retaliation claim against their employer. *See* 31 U.S.C. § 3730(h). The provision, which contains two clauses known as the "litigation clause" and the "opposition clause," states,

> (1) In general. Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section* **or** <u>other efforts to stop 1 or more violations of this subchapter</u>.

31 U.S.C. § 3730(h) (litigation clause in *italics*; opposition clause <u>underlined</u>).

Employees enjoy protection even if they are unaware of the FCA when they attempt to stop the false claim. *See Childree v. UAP/GA CHEM, Inc.*, 92

F.3d 1140, 1146 (11th Cir. 1996) ("[N]othing in the language of § 3730 suggests that its protections are limited to those who were motivated by it."). An employee "must suspect that her employer has made a false claim to the federal government." *Hickman v. Spirit of Athens, Ala., Inc.*, 985 F.3d 1284, 1289 (11th Cir. 2021).

To qualify for protection under the Whistleblower Provision, Rucker must establish that (1) she was engaged in protected conduct and (2) the Defendant retaliated against her because of that protected conduct. *Mack v. Augusta-Richmond Cnty., Ga.*, 148 F. App'x 894, 897 (11th Cir. 2005) (citation omitted). When evaluating the first element under the litigation clause, the question is whether the plaintiff's "complaints of illegal activity occurred when there was a distinct possibility that she or the government would sue the defendants under the False Claims Act." *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303-04 (11th Cir. 2010) (evaluating the plaintiff's claim of engaging in protected conduct under the "distinct possibility" standard when she did not file a *qui tam* action). Under this standard, Rucker's conduct constitutes "protected conduct" only if "there was at least 'a distinct possibility' of litigation under the False Claims Act at the time of the employee's actions." *Id.* at 1303 (citing *Childree*, 92 F.3d at 1140). In applying this standard, the Eleventh Circuit concluded that a plaintiff's "allegations that she complained about the defendants' 'unlawful actions' and warned them that they were

'incurring significant criminal and civil liability' ... [was] sufficient, if proven, to support a reasonable conclusion that the defendants were aware of the possibility of litigation under the False Claims Act." *Id.* at 1304. "If an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h)." *Id.*

As to the first element, Great Dane argues that Rucker has not pled a single fact showing that filing an FCA action by anyone was a possibility; that there are no dates, names of agencies/parties to whom the alleged activity was reported; and that there are no facts to show how Great Dane could have feared that Rucker was contemplating reporting the company for fraud. (Doc. 32 at 7). Great Dane acknowledges that it is "well-settled" that an employee may put her employer on notice of possible FCA litigation by making internal reports that alert the employer to fraudulent or illegal conduct, but Rucker does not allege she made any such internal reports. (Doc. 32 at 7) (citing *Sanchez,* 596 F.3d at 1304).

As to the second element, Great Dane argues that Rucker has not pled a causal connection between her protected conduct and her termination; specifically, that the Amended Complaint provides no dates when she reported the illegal activity.

In response, Rucker argues that she has stated a claim under either the litigation clause or the opposition clause.  The Court agrees.

In the Amended Complaint, Rucker alleges that she complained to Ashley, the CFO and Chairman of the Board, "numerous times for years" about the illegal misuse of federal funding; that she complained to Scott, the east coast office manager; and that she made written disclosures to 7-11's Chief Compliance Officer from October to December 2020.  (Doc. 28 at ¶¶ 11).  She alleges that the company was aware of her disclosure of its fraudulent activities to Ashley.  (Doc. 28 at ¶ 16).  While Rucker did not warn Great Dane that it could incur "significant criminal and civil liability," Rucker made clear that Great Dane's actions were contrary to state and federal law.  In addition, beyond alerting Great Dane, Rucker alleges that she made written disclosures to 7-11's Chief Compliance Officer. (Doc. 28 at ¶ 11).  And Rucker alleges that Great Dane submitted false claims to the federal government.  Consequently, at this stage in the litigation, it appears that Great Dane was aware of the possibility of litigation under the FCA.

Having determined that Rucker's allegations support a reasonable conclusion that Great Dane was aware of the possibility of litigation under the FCA, at this stage in the litigation, the Court's analysis need not proceed further.  Indeed, Great Dane briefs the Court on the second element—whether Great Dane retaliated against Rucker because of her protected conduct—by

citing to the Middle District of Alabama case *Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp. 2d 1307 (M.D. Ala. 1999). But *Mann* dealt with a claim for retaliatory discharge under § 3730(h) at the summary judgment stage. In contrast, the instant action is only at the motion to dismiss stage. Picking up on this, Rucker argues in her response brief that a causal connection is an evidentiary standard, not a pleading requirement, but is present here anyway.

The Eleventh Circuit has explicitly held: "If an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h)." *Sanchez*, 596 F.3d at 1304. Because Rucker's allegations, taken as true, support a reasonable conclusion that Great Dane could have feared being reported for the illegal misuse of federal funding, Rucker's Amended Complaint sufficiently states a claim for retaliatory discharge under § 3730(h). And Rucker has pled a causal connection between the protected activity and her termination—she tried to stop the illegal conduct right up until December 2020; she was then placed on administrative leave shortly thereafter; and was terminated on January 15, 2021.

For the same reasons, the Court finds that Rucker has stated a claim under the opposition clause, which protects "efforts to stop 1 or more violations

of this subsection." 31 U.S.C. § 3730(h)(1).  She alleges that she reported the illegal conduct (including PPP procurement fraud and using PPP money to pay bribes) to Ashley and Scott, in addition to having "consistently objected to such illegal practices and tried to put a stop to the illegal conduct identified in ¶10(a) by making written disclosures to 7-11's Chief Compliance Officer beginning from October 2020 to December 2020." (Doc. 28 at ¶ 11).  By reporting her concerns directly to Great Dane's administration and trying to stop the illegal conduct by going to 7-11's Chief Compliance Officer, Rucker fits into the opposition clause.

### B. Florida's Private Whistleblower Act (Count II)

Great Dane argues that Rucker pleads only conclusory allegations to support the state-law claim and that she must state the claim with particularity or attach a copy of any complaint she made to Great Dane.  (Doc. 32 at 10-11).

Florida's Private Whistleblower Act provides:

> [a]n employer may not take any retaliatory personnel action against an employee because the employee has: (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, or regulation.

Fla. Stat. § 448.102(3).  Though Florida substantive law applies to retaliation claims under the FWA, in analyzing retaliation claims under the FWA, a court applies the *McDonnell Douglas* burden-shifting framework.  *See Sierminski v.*

*Transsouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000).[3]  First, the employee must establish a *prima facie* case of retaliation.  "To establish a *prima facie* claim for retaliation under the Whistle Blower's Act, a plaintiff must demonstrate: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal relation between the two events." *Chaudhry v. Adventist Health System Sunbelt, Inc.*, 305 So. 3d 809, 813-14 (Fla. Dist. Ct. App. 2020) (cleaned up).  Once a plaintiff establishes a *prima facie* case, the employer may articulate a non-retaliatory reason for its action, which the employee can rebut by evidence of pretext.  *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181-82 (11th Cir. 2010).   The first element of Rucker's *prima facie* case is at issue here.

To establish the first element, the plaintiff must allege that she "objected to or refused to participate in (i) an illegal activity, policy, or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer."  *McIntyre v. Delhaize Am., Inc.*, No. 8:07-cv-2371-T-30TBM, 2009 WL 1039557, at *3 (M.D. Fla. Apr. 17, 2009), *aff'd*, 403 F. App'x 448 (11th

---

[3] Although the court in *Sierminski* acknowledged that it found the *McDonnell Douglas* framework applicable to FWA claims only because there was no guiding case law from Florida, Florida appellate courts have since endorsed use of that framework for FWA claims. *See, e.g., Chaudry v. Adventist Health Sys. Sunbelt, Inc.*, 305 So. 3d 809, 814 n.1 (Fla. Dist. Ct. App. 2020); *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 419 (Fla. Dist. Ct. App. 2015).

Cir. 2010).  Great Dane argues that Rucker does not allege with the requisite specificity that she engaged in any protected activity.

Viewing the facts in a light most favorable to Rucker, as discussed above, she has sufficiently pled that she opposed Great Dane's alleged practices violating federal and state laws.  The Amended Complaint provides instances in which Rucker engaged in protected activity to satisfy the first element of her *prima facie* case.  Because of her complaints, Rucker states she suffered a negative employment action in the form of termination.  Rucker does not have to plead the claim with particularity, *see United States ex rel. Ashmore v. 1st Financial, Inc.*, Case No. 8:16-cv-1387-T-23JSS, 2018 WL 310032, at *3 (M.D. Fla. Jan. 5, 2019), and the Court finds no authority (and Great Dane cites none) for the proposition she must attach a copy of her complaints to the Amended Complaint here.

### C. Injunctive Relief

Great Dane argues, with citation to no authority, that Rucker's prayer for injunctive relief is improperly pled because injunctive relief is not an element of relief afforded under the FCA and FWA.  (Doc. 32 at 10, 12).  The Amended Complaint requests "injunctive relief directing this Defendant to cease and desist from all retaliation against employees who engage in speech protected by the FCA" and "an injunction restraining continued violation of the [FWA]."  (Doc. 28 at 9, 12).  Great Dane also asserts that the Amended

Complaint violates Local Rule 1.09, because it does not include the words "[Preliminary or Permanent] Injunctive Relief Requested."

Contrary to Great Dane's argument, injunctive relief is a form of relief authorized by the FWA.  *See* Fla. Stat. § 448.103(2)(a).  But whether injunctive relief may be had when a retaliation action is filed under § 3730(h) is less clear.  Because Great Dane provides no memorandum of law for the Court's consideration on this point, the Court provides no opinion on the issue now.  If Great Dane wishes to re-raise the issue later, it must provide citation to authority.

As for Local Rule 1.09, deciding this case on the merits rather than dismissal based on a technicality is warranted and in the interest of justice.  Any future filings must comply with new Local Rule 1.09.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss (Doc. 32) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on September 14, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record